**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 29th day of March, 2018.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

In re:

**EXPERT SOUTH TULSA, LLC**,

         Debtor.          Case No. 10-20982

---

**LTF REAL ESTATE COMPANY, INC.**,     Adv. No. 11-06011

         Plaintiff,

         v.

**EXPERT SOUTH TULSA, LLC**, and
**FIRST AMERICAN TITLE INSURANCE COMPANY**,

         Defendants.

**OPINION**

More than seven years after plaintiff LTF Real Estate Company, Inc. ("LTF") filed this adversary proceeding against defendant Expert South Tulsa, LLC ("Debtor"), this matter comes before the Court to resolve the remaining issues in the proceeding: (1) LTF's motion for summary judgment on the disbursement of certain escrow funds; and (2) the parties' cross-motions for summary judgment on Debtor's counterclaims for fraudulent transfer.[1] For the reasons set forth below, the Court will (1) grant in part and deny in part LTF's motion for summary judgment on the disbursement of the escrow funds, and (2) reserve decision on the parties' cross-motions for summary judgment on the fraudulent transfer counterclaims pending additional briefing.[2]

**I.    UNDISPUTED FACTS[3] AND PROCEDURAL BACKGROUND**

In 2008, LTF bought a piece of real property from Debtor for $3,000,000. The purchase agreement required Debtor to complete certain improvements to the development in which the property was located and to place $1,226,400 into an interest-bearing escrow account ("Escrow Funds") with defendant First American Title Insurance Co. ("First American").[4] Under the terms of the escrow agreement, the Escrow Funds would be returned to Debtor after it completed the improvements. However, if Debtor failed to complete the improvements, LTF could complete the improvements itself ("Self-Help") and obtain reimbursement from the Escrow Funds. Debtor failed to complete the improvements.

---

[1] ECF 54, 79. The Court notes, for the sake of clarity, that judgment and dismissal are separate legal concepts—i.e., summary judgment does not "dismiss" claims.

[2] *Cf.* ECF 140 (ordering additional briefing).

[3] *See* ECF 37 at 2-3.

[4] The Court dismissed First American as a party to this case in 2014. *See* ECF 97.

On March 30, 2010, Team Viva, LLC, filed an involuntary Chapter 7 bankruptcy petition against Debtor.[5] The case was converted to Chapter 11 on May 6, 2010,[6] and back to Chapter 7 on March 29, 2016.[7]

LTF filed its complaint in the instant adversary proceeding on January 10, 2011. In its complaint, LTF sought a declaration that the Escrow Funds were not property of Debtor's bankruptcy estate and asked for disbursement of the Escrow Funds from First American to LTF.[8] Debtor filed an answer on March 11, 2011. Debtor's answer contained one counterclaim, which asserted that the Escrow Funds were property of Debtor's bankruptcy estate and asked for disbursement of the Escrow Funds to Debtor rather than LTF.[9] The answer also raised a number of affirmative defenses.[10]

On August 29, 2011, this Court granted partial summary judgment in favor of LTF on LTF's complaint, ruling that (a) Debtor had a contingent interest in the escrow agreement; (b) the Escrow Funds were not property of the estate;[11] (c) neither LTF nor Debtor was entitled to immediate disbursement of the Escrow Funds; and (d) LTF could exercise its Self-Help remedy under the escrow agreement.[12] Following this Court's entry of partial summary judgment, LTF

---

[5] Case No. 10-20982, ECF 1.

[6] Case No. 10-20982, ECF 12.

[7] Case No. 10-20982, ECF 281.

[8] ECF 1.

[9] ECF 14.

[10] ECF 42 ¶¶ 38, 39.

[11] The BAP and the Tenth Circuit affirmed on December 14, 2014, and October 19, 2015, respectively. ECF 115, 119.

[12] The BAP held that this entry of partial summary judgment did not resolve the entire adversary proceeding because (1) "the dispute over entitlement to the funds had not yet been fully adjudicated," and (2) the judgment did not expressly address Debtor's counterclaim for the funds. *See* ECF 65.

3

sent Debtor a "Self-Help Notice,"[13] paid $1,760,485.34 to complete the improvements,[14] and moved for disbursement of the Escrow Funds to LTF.[15] The Court originally abstained from ruling on disbursement of the Escrow Funds (i.e., the remaining issues in LTF's complaint along with Count I of Debtor's counterclaim) on the constitutional grounds set forth in *Stern v. Marshall*, 131 S. Ct. 2594 (2011),[16] but reconsidered in light of *Executive Benefits Insurance Agency v. Arkison (In re Bellingham Insurance Agency, Inc.)*, 134 S. Ct. 2165 (2014), and *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015),[17] given the parties' previous consent to such determination by this Court.[18]

Meanwhile, Debtor filed an amended answer on September 15, 2011.[19] The amended answer added two new counterclaims for fraudulent transfer of the underlying real property, alleging that the $3,000,000 paid by LTF did not constitute "reasonably equivalent value."[20] On December 15, 2011, Debtor moved for summary judgment on its fraudulent transfer counterclaims.[21] The Court denied Debtor's motion, reasoning that Debtor had not sought leave to file the counterclaims pursuant to Fed. R. Bankr. R. 7013 and 7015.[22] However, the Court reinstated the counterclaims on July 25, 2012.[23] As observed by the BAP, this reinstatement of

---

[13] *See* ECF 80-1.

[14] *See* ECF 81.

[15] ECF 79.

[16] ECF 97.

[17] ECF 123.

[18] ECF 7.

[19] ECF 42.

[20] *Id.*

[21] ECF 54.

[22] ECF 57, 60.

[23] ECF 68.

4

the counterclaims also reinstated Debtor's summary judgment motion.[24]

Following the Court's original denial of Debtor's summary judgment motion, LTF moved to dismiss Debtor's entire counterclaim.[25] While that motion was still pending, LTF also moved for summary judgment on the entire counterclaim.[26] On February 18, 2014, the Court granted LTF's motion to dismiss: Count I (disbursement of the Escrow Funds) was dismissed on *Stern* grounds, and Counts II and III (fraudulent transfer) were dismissed *sua sponte* for failure to state a claim upon which relief could be granted.[27] Having thus dismissed the entire counterclaim, the Court denied as moot the parties' cross-motions for summary judgment.[28] However, on December 4, 2014, the BAP (1) held that this Court had erred in *sua sponte* dismissing Debtor's fraudulent transfer counterclaims, (2) vacated the Court's orders denying as moot the parties' cross-motions for summary judgment, and (3) remanded those motions back to this Court for consideration on the merits.[29]

## II.   ANALYSIS

Summary judgment procedure is properly regarded not as a disfavored procedural

---

[24] ECF 115 at 33. Debtor's first argument in its summary judgment motion is that LTF defaulted on the fraudulent transfer counterclaims because LTF did not timely file an answer to those counterclaims. However, that argument has been mooted by the parties' Agreed Amended Scheduling Order (ECF 132) and LTF's timely filing of an answer (ECF 133) pursuant to that order.

[25] ECF 73.

[26] ECF 79.

[27] ECF 97.

[28] ECF 95, 99.

[29] ECF 115. Because the BAP remanded the parties' cross-motions for summary judgment (ECF 54, 79) back to this Court for consideration on the merits, the Court rejects Debtor's contention, made during oral argument on March 5, 2018, that the issues raised in those motions are not properly before the Court at this time. Debtor is correct, however, that LTF's first motion for summary judgment (ECF 21) has been adjudicated and is no longer before the Court.

shortcut, but rather as an integral part of the Federal Rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 329, 327 (1986). The court shall grant summary judgment where there is no genuine dispute[30] as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 56(a); Fed. R. Civ. P. 56(a). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The burden of establishing the nonexistence of a 'genuine [dispute]' is on the party moving for summary judgment." *Celotex*, 477 U.S. at 330. The moving party may discharge this burden by pointing out an absence of evidence to support the nonmoving party's case. *Id.* at 325.

   1.   **LTF's motion for summary judgment on disbursement of the Escrow Funds**

This Court has already held, in a decision affirmed by the BAP, that (1) the Escrow Funds were not property of the bankruptcy estate at the time Debtor's bankruptcy was filed and that (2) LTF could exercise Self-Help to seek disbursement of the Escrow Funds.[31] The undisputed facts of the case demonstrate that LTF did exercise Self-Help: it paid $1,760,485.34 to complete the improvements after sending Debtor a "Self-Help Notice" on March 16, 2012. As to Debtor's affirmative defenses, LTF points out that "[Debtor] presents absolutely no evidence or argument contesting LTF's right to receive a full disbursement of the escrow funds in accordance with the parties' Purchase Agreement and Post-Closing Agreement and the Bankruptcy Court's prior orders,"[32] and that "[Debtor] has not objected – or otherwise responded – to LTF's March 16, 2012 'Self-Help Notice.'"[33]

---

[30] Rule 56(a)'s "genuine issue" was revised to "genuine dispute" in 2010.

[31] ECF 37, 115.

[32] ECF 89 at 4.

[33] ECF 79 at 8.

The Chapter 7 trustee presents no evidence to the contrary; instead, he argues—more than seven years after the commencement of this adversary proceeding, and presumably under Federal Rule of Civil Procedure 56(d)— that summary judgment is premature at this time and ought to be rejected in favor of a "full development of the record and a fair adjudication of the merits."[34] However, LTF correctly points out that this argument is insufficient to survive a motion for summary judgment. As already explained by the BAP in this proceeding:

> To invoke Rule 56(d)'s protections, the nonmovant must furnish an affidavit or declaration explaining why facts precluding summary judgment cannot be presented without granting the nonmovant additional time to respond, including identifying the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain 'how additional time will enable him to rebut movant's allegations of no genuine issue of fact.[35]

Because the trustee's conclusory argument fails to satisfy the requirements of Rule 56(d), and because the undisputed facts show that LTF exercised Self-Help, it appears at first glance that there is no genuine dispute of material fact over LTF's entitlement to disbursement of the Escrow Funds.

---

[34] ECF 129. While the Chapter 7 trustee contended at oral argument that this case presents issues of "lapse of the escrow agreement," "abandonment of its contract rights by LTF," "failure to exercise the self-help remedy in a timely manner," and "partial performance," these arguments—for which the trustee cites no factual support—are insufficient to defeat a motion for summary judgment.

[35] ECF 115 at 14-15 (citing *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992), and *Price ex rel. Price v. W. Res. Inc.*, 232 F.3d 779, 783 (10th Cir. 2000), and quoting *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984)); *see also* ECF 119 at 7 (Gorsuch, J.) ("This indication of present intention [to conduct discovery] does not come close to explaining why summary judgment would be inappropriate, what discovery might be expected to show, what steps the company had already taken to try to secure necessary information, or what additional time might be required. Neither is it obvious to us that [Debtor] might have said anything persuasive on any of these questions, for we have a hard time imagining how additional fact discovery would have aided [Debtor] in presenting more nuanced legal arguments concerning its own escrow agreement and performance — facts that were already well known to it.").

However, the escrow agreement requires LTF to take another step before it can be reimbursed from the Escrow Funds:

> To obtain such reimbursement, *[LTF] shall provide to [First American] and [Debtor] a certificate of a responsible officer of FCA* as to the costs and expenses incurred in connection with such Self Help, accompanied by invoices, purchase orders and/or such other documentation reasonably required by [First American] and [Debtor] to confirm the amount of such costs and expenses.[36]

While LTF's Self-Help Notice to Debtor stated that LTF would provide the requisite certificate to Debtor and First American,[37] the record before this Court does not show—and LTF does not argue—that LTF ever did. Without evidence that LTF complied with this provision of the escrow agreement, the Court cannot order immediate disbursement of the Escrow Funds to LTF. Instead, the Court holds that LTF is entitled to the Escrow Funds, and grants relief from the automatic stay to the extent necessary for LTF to obtain reimbursement pursuant to the terms of the escrow agreement.

LTF's motion also requests a deficiency judgment for the difference between the amount it paid to complete the improvements and the amount of the Escrow Funds. However, even assuming that this request is appropriate from a procedural standpoint (given that it asks for relief not sought in LTF's complaint), the record does not indicate that Debtor has consented to final adjudication of that request by this Court. *Cf. Wellness Int'l*, 135 S. Ct. at 1947-49. The Court therefore denies LTF's request for a deficiency judgment without prejudice to any rights LTF may have to seek that judgment in a different forum.

### 2. Cross-motions for summary judgment on fraudulent transfer counterclaims

In *In re Expert South Tulsa, LLC*, 842 F.3d 1293 (10th Cir. 2016) ("*Cornerstone*"), a

---

[36] ECF 81-2 ¶ 4(b) (emphasis added).

[37] ECF 80-1.

separate adversary proceeding in Debtor's bankruptcy case, the Tenth Circuit summarized the

law applicable to Debtor's fraudulent transfer counterclaims:

> Debtor brings two claims of fraudulent or constructively fraudulent transfer against Cornerstone.[38] Both require that a transfer of property by Debtor have been for less than reasonably equivalent value. Under 11 U.S.C. § 554(b) the bankruptcy trustee has the power to avoid a transfer if it is voidable by a creditor under "applicable law," which may be state law. Debtor relies on Oklahoma's Uniform Fraudulent Transfer Act, which permits a creditor to void a transfer as fraudulent if the debtor did not "receive *a reasonably equivalent value* in exchange for the transfer . . . and the debtor was insolvent at that time." Similarly, the trustee may avoid a transfer under 11 U.S.C. § 548 (a)(1)(B) if the debtor (1) transferred "an interest . . . in property" within two years before the filing of the bankruptcy petition; (2) received less than a "*reasonably equivalent value*" in exchange for the transfer; and (3) was insolvent at the time of the transfer or became insolvent as a result of the transfer. Although both § 544(b) and § 548(a) speak in terms of a "trustee" having the power to avoid a transfer, 11 U.S.C. § 1107 allows a debtor-in-possession, such as Debtor here, to take such action.

*Id.* at 1296-97 (citations omitted). While LTF argues that the Tenth Circuit held "as a matter of

law" in *Cornerstone* that $3 million constitutes reasonably equivalent value for real property

worth $4.99 million, this argument is simply incorrect. Here is the relevant passage from that

case:

> In support of its claim, Debtor contends that Memorial Commons was worth $4.99 million at the time of Cornerstone's purchase (a value we can assume to be correct, because Debtor cannot prevail even if the value was that high), yet Cornerstone paid only $3 million. The bankruptcy court rejected the argument largely because Debtor benefited from not only the $3 million but also from release of the more than $6 million it would still owe on the mortgage loan. Debtor responds that its obligation on the note was not released. Since it is obvious that Debtor received at least reasonably equivalent value for the property if the obligation was released (the amount due on the note, $7.75 million, is more than

---

[38] Cornerstone and LTF bought separate pieces of real property from Debtor in the same development.

9

> reasonably equivalent to $4.99 million), we now examine whether there was a release.

*Id.* at 1297. *Cornerstone* thus stands, at best, for the proposition that the release of a $7.75 million mortgage note constitutes reasonably equivalent value for real property with an assumed value of $4.99 million. LTF's argument—that $3 million, therefore, necessarily constitutes reasonably equivalent value for real property with an alleged value of $4.337 million—does not follow from *Cornerstone*.

The only evidence as to the value of the real property at issue here comes in the form of an affidavit from Debtor's principal, Edwin H. Hawes, III.[39] In the affidavit, Mr. Hawes states:

> I have personal knowledge of the financial affairs of [Debtor], the market values of its real estate holdings, and the matters set forth in this Affidavit . . . .
>
> . . .
>
> [Debtor] received less than reasonably equivalent value in exchange for the transfer of the LTF Acreage[40] to LTF. The LTF acreage encompassed nearly one-third of the total amount of the Property[41] . . . owned by [Debtor]. The Property retained a market value of at least $13,800,000 at or about the time of the sale of the LTF Acreage based on other sales and as otherwise substantiated by a third-party appraisal on an "as-is" basis which [Debtor] retains as part of its regular business records. The market value of the LTF Acreage amounted to no less than $4,337,000.[42]

LTF argues that Mr. Hawes' affidavit testimony is inadmissible, and therefore fails to establish any genuine dispute of material fact. The Court has ordered the parties to submit additional

---

[39] ECF 54 at 14-16.

[40] Debtor defines "LTF Acreage" as "approximately 11 acres . . . of the Property." *Id.* at 5.

[41] Debtor defines "Property" as "certain real property in Tulsa, Oklahoma consisting of approximately 34 acres in a commercial development known as Memorial Commons." *Id.* at 4.

[42] *Id.* at 15.

10

briefs on this issue,[43] *see, e.g.*, *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207 (10th Cir. 2011); *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268 (10th Cir. 2005); *United States v. 10,031.98 Acres of Land*, 850 F.2d 634 (10th Cir. 1988), and will reserve decision on the parties' cross-motions for summary judgment on the fraudulent transfer counterclaims (including LTF's argument under Rule 56(d)) until the additional briefing is complete.

### III. CONCLUSION

For the reasons set forth above, the Court will (1) grant in part and deny in part LTF's motion for summary judgment on disbursement of the Escrow Funds; and (2) reserve decision on the parties' cross-motions for summary judgment on Debtor's fraudulent transfer counterclaims pending additional briefing. The Court will enter a separate judgment as required by Fed. R. Bankr. P. 8058 and Fed. R. Civ. P. 58.

IT IS SO ORDERED.

###

---

[43] ECF 140.